UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **JOSEPH C. SHELTON** | **09-10538** |
| DEBTOR | CHAPTER 7 |
| | |
| **KATRINA THOMAS** | ADV. NO. |
| PLAINTIFF | **09-1034** |
| V. | |
| **JOSEPH C. SHELTON** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Katrina Thomas sued for a determination that her claim against debtor Joseph C. Shelton is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). This memorandum opinion sets forth the reasons the obligation is dischargeable.[1]

## FACTS

Plaintiff Katrina Thomas approached her trusted personal banker, Stanley Varner, to discuss investment opportunities in July 2005. Mr. Varner referred Thomas to the debtor, his good friend and for a semester his law school classmate. The plaintiff and defendant afterward had several telephone conversations in which Mr. Shelton told Ms. Thomas about his

---

[1] The court dismissed Thomas's claim under 11 U.S.C. §523(a)(2)(B) at trial on the debtor's motion for judgment on partial findings under Fed. R. Bankr. P. Rule 7052(c). A judgment dismissing the claim was entered on September 30, 2010. (P-132).

construction business, Unlimited Development, L.L.C. ("Unlimited"),[2] and his plan to secure investors to fund a residential construction project in Baton Rouge.[3]  Ms. Thomas testified that Mr. Shelton told her that the Baton Rouge area housing market was good and that Hurricane Katrina had created demand for more residential construction.  Mr. Shelton then asked Ms. Thomas whether she would be interested in investing.  Thomas told the debtor that she could not invest as much money as other investors – each of whom according to the debtor had invested between $110,000 and $120,000 – but might be able to invest half as much.  Ms. Thomas afterward consulted again with Varner, who told her he trusted the debtor and that Shelton would be a "good investor [sic] for you."[4]

Following a delay while she awaited approval, in late October 2005 Ms. Thomas established a $60,000 line of credit at Hibernia National Bank.  She used the credit line to obtain a $50,000 cashier's check, which she deposited into the account of her business, Catland Realty, L.L.C.[5]  She then sent the debtor three or four checks totaling $50,000 drawn on the business account.  Thomas signed the checks but left blank all other parts, including dates, payees and amounts.   Shelton completed the checks in amounts totaling $50,000 over the succeeding weeks.[6]

Until this time, plaintiff and defendant had never met.

---

[2]  According to Records from the Louisiana Secretary of State's Commercial Division, Unlimited Development, L.L.C. registered to do business in October 2004 but last filed an annual report in February 2006.  The company is now inactive. Exhibit A-1, p.10.  The records identify the company's officers as the debtor, Dwayne Shelton and Isaac Thomas.  Mr. Shelton testified that *Isaiah* Thomas was an owner of the company, not *Isaac* Thomas.

[3]  Although Ms. Thomas insisted that she understood the construction project was in Baton Rouge,  the debtor testified that the homes were being built in Ascension Parish.

[4]  Transcript of May 24, 2010 trial, p. 14, ll. 3-4.  The context of Ms. Thomas's testimony made plain that Mr. Varner told her funding the debtor's project was a good *investment*.

[5]  October 31, 2005 check payable to Catland Realty, L.L.C. and endorsed by Ms. Thomas.  Exhibit A-1, p. 8.

[6]  The evidence did not establish whether the debtor cashed the checks or deposited them into an account.

Mr. Shelton asked Ms. Thomas for another $5,000 soon after he had used all the blank checks, and Ms. Thomas gave Shelton $5,000 in cash at a meeting in Alexandria, Louisiana. On November 3, 2005, the debtor executed a promissory note for $55,000 in Ms. Thomas's favor, due March 3, 2006.[7]

Ms. Thomas received a bachelor's degree in business administration in 1994 and has been in the insurance business since then, the past ten years as an independent insurance agent. Despite her experience and education, Ms. Thomas did little to investigate the debtor or his business before she gave him a substantial sum. In fact, the evidence demonstrated that the plaintiff had a casual attitude about her decision to do business with Shelton. For example, she did not obtain, or even request, any financial statements or other financial information from Mr. Shelton either before or after sending him blank checks to fund most of the $55,000. Nor did she confirm that the debtor was a licensed contractor.[8] When Ms. Thomas asked for progress reports on the project, Mr. Shelton offered to take her to the site of the home construction and show her the work being done. Ms. Thomas admitted being invited to visit the project but declined due to another conflicting commitment. No evidence established that the plaintiff ever tried to reschedule a visit to the project site.

Instead, Ms. Thomas relied on another source for her information about Mr. Shelton. She repeatedly testified that she relied only on Stanley Varner's character reference for the debtor

---

[7] Promissory Note, Exhibit A-1, p. 3. The due date on the note was extended to June 30, 2006 and then September 15, 2006. Promissory Note Extensions, Exhibit A-1, pp. 4 and 5.

[8] Mr. Shelton testified that he told Ms. Thomas that although he had a construction business he did not hold a contractor's license. The debtor testified that he was in the process of getting a contractor's license and that Unlimited had partnered with another company, Brass Construction, L.L.C., to build homes. Transcript of May 24, 2010 trial, p. 53, ll. 4-19. The plaintiff denied that Mr. Shelton ever told her this but admitted never asking him to produce a contractor's license. Transcript of May 24, 2010 trial, p. 35, ll. 13-16.

before she decided to invest in Mr. Shelton's project.[9] Varner confirmed that he was Ms. Thomas's banker and a law school classmate of the debtor.[10] He also confirmed that he told Ms. Thomas that Mr. Shelton was a home builder and acknowledged that he introduced her to Mr. Shelton because he knew she was looking for investments.[11] Mr. Varner admitted telling Ms. Thomas that he trusted the debtor and stated that his opinion of Shelton has not changed since he learned of the parties' dispute.[12]

The debtor did not dispute receiving the plaintiff's money but denied misrepresenting anything to her in connection with the loan. He admitted asking Ms. Thomas if she wished to invest in the homes he was building after Hurricane Katrina devastated southeastern Louisiana in late August 2005. He also acknowledged receiving $55,000 from Ms. Thomas and testified that those funds, combined with his own resources and funds provided by Isaiah Thomas (no relation to the plaintiff), comprised his "pool" of money for home building. Mr. Shelton insisted that he used the money to build homes, and documentary evidence supports a finding that he had planned construction[13] although the bank statements he produced did not demonstrate unambiguously that he spent the investors' money for that purpose. He explained that the funds proved inadequate for the project because site preparation was unexpectedly more costly and because construction materials cost more after Hurricane Katrina. He also explained that Mr.

---

[9] Transcript of May 24, 2010 trial, p. 42, ll. 6-9; p. 177, ll. 12-19.

[10] Transcript of October 5, 2009 deposition of Stanley Varner ("Varner deposition"), p. 5, ll. 4-7, 22-25; p. 6, l. 1.

[11] Transcript of Varner deposition, p. 5, ll. 19-21; p. 6, ll. 20-22.

[12] Transcript of Varner deposition, p. 8, ll. 8-19.

[13] Ms. Thomas offered into evidence a Whitney National Bank construction loan worksheet for Unlimited's construction of a home on a lot number 11 in the Louisiana Heritage subdivision in St. Amant, Louisiana. Exhibit A-11. The debtor offered into evidence cost schedules for Unlimited's construction of homes on lots numbered 8, 10 and 12 in the same subdivision. Exhibit A-12. Mr. Shelton referred to work on lots numbered 8, 10, 11 and 12 in his testimony about his company's home construction work.

Thomas, one of Unlimited's members, abruptly decided to sell one of the completed homes and apparently kept the proceeds rather than using them to complete other homes. These developments in combination left Shelton was unable to repay Ms. Thomas.

Ms. Thomas eventually sued the debtor for a declaratory judgment on the promissory note.[14] She obtained a judgment for $70,927.33 plus costs and interest.[15] The debtor filed chapter 7 on April 22, 2009. He scheduled an unsecured debt of $100,000 to Katrina Thomas.

## ANALYSIS

Ms. Thomas's complaint alleges that the debtor's actions render his debt to her nondischargeable under 11 U.S.C. §523(a)(2)(A), which excepts from discharge any debt:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ---

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition …."

Section 523(a)(2)(A) applies to debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta*, 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Ms. Thomas must prove by a preponderance of the evidence that: (1) the debtor made representations; (2) the debtor knew they were false when they were made; (3) the debtor made the representations with the intention and purpose to deceive her; (4) she relied on the representations; and (5) she sustained losses as a proximate

---

[14] April 23, 2007 Petition for Declaratory Judgment on Note in "Katrina Thomas v. Joseph C. Shelton," Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana filed. Exhibit A-1.

[15] April 21, 2008 Final Judgment on Petition for Declaratory Judgment on Note. Exhibit A-2.

result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F. 3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991). Ms. Thomas did not prove that Mr. Shelton's debt to her falls within 11 U.S.C. §523(a)(2)(A).

Before Ms. Thomas decided to loan Shelton money, the debtor told her that he had a construction business and was putting together investors for a home construction project in the Baton Rouge area. He also told her that the post-Hurricane Katrina housing market in the area was good and that demand supported more residential construction. Mr. Shelton testified that he informed Ms. Thomas he did not hold a contractor's license but was applying for one.

Ms. Thomas testified that the debtor never told her he did not have a contractor's license, but she did not offer evidence that any of Mr. Shelton's other representations to her before she loaned him the money were false, much less that he knew they were false when he made them to her. Further, she admitted that her banker, Mr. Varner, vouched for Mr. Shelton's trustworthiness and stated that her investment with Shelton would be advantageous. Finally, Ms. Thomas offered no evidence other than her own testimony to contradict the debtor's testimony that he intended to use the money he'd borrowed from Ms. Thomas to build homes and that the money was actually used for this purpose.[16] Therefore, plaintiff failed to the first three elements of nondischargeability under section 523(a)(2)(A).

---

[16] The plaintiff's post-trial memorandum urges the court to draw an adverse inference from the debtor's failure to produce all his bank records and those of Unlimited. She maintains that failure to produce the records shows that the money Shelton obtained from Ms. Thomas actually was used for the debtor's personal expenses. A defendant's failure to offer evidence "within his ability to produce" to rebut the opposing party indeed may raise a presumption that the evidence would be unfavorable to the defendant. *Transcontinental Gas Pipe Line Corp. v. Mobil Drilling Barge, et al.*, 424 F.2d 684, 694 (5th Cir. 1970). However, the adverse inference "will not excuse the failure of the (plaintiff) to meet the burden of establishing facts sufficient to make out a case." *Id*. Therefore, the adverse inference does not relieve the plaintiff from proving the other elements necessary to establish a claim under section 523(a)(2)(A).

The next issue is whether Ms. Thomas justifiably relied on the debtor's statements in deciding to loan money to him.[17] Ms. Thomas did not prove her reliance on any statements Shelton may have made to her, so justifiability is irrelevant.

The plaintiff testified more than once that she relied on *Mr. Varner's* representations about Mr. Shelton in deciding to invest with the debtor. Varner introduced Ms. Thomas to the debtor. After Mr. Shelton told Ms. Thomas in their telephone conversations of his plans for the money, she returned to Varner for his advice and recommendation. Varner told Ms. Thomas the debtor's business would be a good investment for her. The plaintiff did not ask the debtor for any financial information before she loaned him the money and even failed to determine whether he held a valid contractor's license. Finally, the plaintiff did not even meet Mr. Shelton until *after* he had cashed the first of the blank checks she sent him.

Ms. Thomas was not an unsophisticated investor. She holds a business degree and runs her own insurance business. Nonetheless, she never asked the debtor himself for any financial or business information before she loaned him the money. The record does not support a finding that she relied on any information Shelton gave her. Instead, it established that Ms. Thomas relied on Mr. Varner's recommendation of the debtor in deciding to lend Shelton money.

---

[17] Section 523(a)(2)(A) requires proof of justifiable reliance on the plaintiff's part. *Field v.Mans,* 519 U.S. 59, 74-75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995) (quoting *Prosser & Keaton on Torts* at 751).

## CONCLUSION

Because Katrina Thomas failed to prove that debtor Joseph Shelton's debt to her is nondischargeable under 11 U.S.C. §523(a)(2)(A), the court will dismiss the remaining claims of plaintiff's complaint.

Baton Rouge, Louisiana, September 30, 2010.

<u>s/Douglas D. Dodd</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE